## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **BEECHGROVE REDEVELOPMENT, LLC** | **CIVIL ACTION** |
| **VERSUS** | **NO: 07-8446-CJB-SS** |
| **CARTER & SONS, INC.** | |

## ORDER

MOTION FOR PROTECTIVE ORDER (Rec. doc. 58)

### DENIED

MOTION TO QUASH SUBPOENA DUCES TECUM (Rec. doc. 59)

### GRANTED IN PART AND DENIED IN PART

Before the undersigned are the motions of a non-party, Regions Bank ("Regions"), for protective order and to quash subpoena duces tecum.

## BACKGROUND

On May 5, 2005, the plaintiff, Beechgrove Redevelopment, L.L.C. ("Beechgrove"), filed a petition in state court. It alleged that: (1) it was the owner of apartment buildings in Westwego; (2) on August 7, 2002, it contracted with Moss Creek Development Company ("Moss Creek"), one of the defendants, to renovate the building designated as 972 Beechgrove; (3) Moss Creek subcontracted the HVAC work to Carter & Sons Plumbing, Heating and Air Conditioning, Inc. ("Carter"); (4) on May 11, 2004, 972 Beechgrove was destroyed by fire; (5) Carter caused the fire; and (6) in addition to property damage, Beechgrove sustained lost income. Rec. doc. 1 (Attachment).

Regions provided a construction loan for the renovation of the property in 2002.  On August 2, 2007, Regions filed suits to foreclose on all of Beechgrove's property.  Rec. doc. 66 at p. 3.

On October 24, 2007, Beechgrove filed a voluntary petition for relief under Chapter 11 of Title 11 in the bankruptcy court in this district.  On November 7, 2007, Beechgrove removed its own action against Moss Creek, Carter and others to federal court.  It asserted that the state court action was related to the Chapter 11 bankruptcy proceeding and the claims were property of the debtor's estate.  Rec. doc. 1.  Beechgrove's initial disclosures contains the following statement:

> Plaintiff claims $1,354,702.93 for property damage, $230,238.00 for loss of rental income, unliquidated delay damages leading to foreclosure and Chapter 11 reorganization, statutory penalties, damages, attorney's fees, expert costs, litigation expenses, court costs, and interest.

Rec. doc. 66 (Exhibit I).  Beechgrove listed William P. Carroll, a Regions vice president, to testify regarding "delay damages and defaults caused by fire and defendants' failure to timely adjust and pay plaintiff's claim."  Id. at 2.

Carter noticed Carroll's deposition and Regions' deposition for records itemizing fifteen categories of documents.  Regions divides these categories into two parts: (A) documents that were prepared by Beechgrove and submitted to Regions by Beechgrove (the "Beechgrove documents"); and (B) documents prepared by Regions for its internal evaluation and analysis.  Rec. doc. 88.

<u>POSITIONS OF REGIONS AND THE PARTIES</u>

Beechgrove has not taken any position on Regions' motions.  It does not appear that Beechgrove provided an authorization for access to its records at Regions.

Carter contends that Beechgrove was in dire financial straits and unable to meet its obligations on the construction loan prior to the fire.  It urges that it needs Carroll's deposition testimony to prepare for his testimony at the trial as a witness for Beechgrove.  It argues that it

2

should be permitted to examine him concerning the documents to demonstrate Beechgrove's loan compliance before and after the fire.  It contends that it needs Regions' internal evaluation and analysis documents to discover the reasons Regions chose to foreclose.

Regions contends that Carter should be required to obtain the Beechgrove documents from Beechgrove.  As to the internal evaluation and analysis documents, it contends Carter may not secure production of the documents because of La. Rev. Stat. Ann. § 6:333(I)(2).

ANALYSIS

1.    Beechgrove documents.

Carter does not demonstrate that it attempted to secure the Beechgrove documents from Beechgrove.  There is no evidence that Beechgrove refused to provide Carter with an authorization to obtain the documents from Regions.  The motion to quash the subpoena duces tecum is granted as to the Beechgrove documents.  Carter must obtain an authorization from Beechgrove, pursuant to La. Rev. Stat. Ann. § 6:333(E), in order to obtain the Beechgrove documents from Regions.[1]

2.    Internal evaluation and analysis documents.

Regions does not dispute Carter's contention that the internal evaluation and review documents are relevant to its defense to Beechgrove's claim that the damages attributable to the fire include the foreclosure.  Pursuant to Fed. R. Civ. P. 26(b)(1), "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party. . . ."  Id (Emphasis added).  Unless the internal evaluation and analysis documents are privileged, Carter may

---

[1]  This is consistent with Herman Henry v. Omega Protein, Inc., 99-2923-HGB, Minute Entry dated April 27, 2000 (Rec. doc. 24), in which Magistrate Judge Roby required a defendant to comply with La. Rev. Stat. Ann. § 6:333(C) to obtain loan information on the plaintiff from non-party financing companies.  See also Feinberg v. Hibernia Corp, 1992 U.S.Dist. LEXIS 2977 (E.D. La. 1992) (Heebe, J.), in which a plaintiff shareholder in a class action sought the loan records of persons who were not parties to the litigation.  The court determined that compliance with Section 333 was required in order to obtain these records.

obtain discovery of them.  Pursuant to Fed. R. Evid. 501:

> [I]n civil actions and proceedings, with respect to an element of a claim for defense as to which State law supplies the rule of decision, the <u>privilege</u> of a witness, person, government, State, or political subdivision thereof shall be determined in accordance with State law.

<u>Id</u>. (Emphasis added).[2]  If Louisiana did not create a privilege with Section 333(I)(2) for a bank's internal evaluation and analysis documents, the documents are discoverable.

The word "privilege" is not defined in the Federal Rules of Civil Procedure or the Federal Rules of Evidence.  23 Wright and Graham, Federal Practice and Procedure §5423 (1980).  In <u>Somer v. Johnson</u>, 704 F.2d 1473 (11th Cir. 1983), the court was required to consider whether a Florida statute regarding a hospital's internal review documents were privileged.  In a malpractice action, the hospital refused to produce written evaluations relating to the doctors who treated the plaintiff. The court held the documents were privileged and held:

> Not only does the rule (the Florida statute) bar discovery of protected materials, but it also precludes their introduction into evidence in a civil action.  These two limitations are the customary indicia of a privilege.

704 F.2d at 1479.  Section 333(I)(2) states:

> Notwithstanding any law to the contrary, all financial records prepared by or for the bank in connection with the bank's evaluation, analysis, or review of any loan or other extension of credit or of any collateral security therefor or reserve therefor shall be confidential and shall not be discoverable or admissible in evidence in any civil action pertaining to or arising out of any such loan, other extension of credit, or the collateral security therefor.

La. Rev. Stat. Ann. § 6:333(I)(2).[3]  Section 333(I)(2) contains the limitations that <u>Somer</u> described

---

[2] Although the state action was removed to federal court by Beechgrove following its filing for reorganization under Chapter 11, it relates to "an element of a claim or defense as to which state law supplies the rule of decision." Fed. R. Evid. 501.  <u>See</u> <u>International Horizons, Inc. v. Committee of Unsecured Creditors</u>, 689 F.2d 996 (11th Cir. 1982), for a discussion of the stage at which a state created privilege is applicable in a bankruptcy proceeding. <u>Id</u>. at 1003.

[3] The <u>Feinberg</u> and <u>Henry</u> decisions did not address whether Section 333(I) created a privilege.

as the customary indicia of privilege.  The statute also must advance an important public interest.

In <u>Somer</u>, the court said:

> Of greater significance, the legislative policy embodied in the provision is the customary concern underlying most privileges. [The Florida statute] reflects a legislative attempt to encourage effective self-policing within the medical community by removing the inhibitions that would necessarily follow if those efforts could later be used in medical malpractice cases.  To that end, the protection seeks to promote candor among those persons conducting and participating in evaluations of medical care.

704 F.2d at 1479 (Citations and quotation marks omitted).  Neither Section 333(I)(2) nor any argument advanced by Regions demonstrate that an important <u>public</u> interest is furthered by the assurance within a bank that its internal review process is protected from disclosure.[4]  While a bank has an interest in maintaining such documents in confidence, this can be accomplished through a confidentiality order.  Section 333(I)(2) does not create a privilege, so the internal evaluation and analysis documents are discoverable.

Regions is required to produce the internal evaluation and analysis documents pursuant to a confidentiality order.  Within ten (10) working days of the entry of this order, the parties shall agree

 on the terms of a protective order.  If they are unable to agree, within ten (10) working days of the entry of this order they shall submit separate orders.  The court will sign the order which most nearly meets the needs of the litigation.  To the extent any internal evaluation and analysis documents refer to any credit other than the Beechgrove credit, such information shall be redacted.

---

[4]  See <u>Somer</u>, 704 F.2d at 1479, n. 6 for examples of public interests.

## COST OF PRODUCTION

Regions is a non-party.  Carter shall reimburse Regions for all costs incurred in the production of the documents.  This includes attorneys' fees other than those incurred in connection with these motions.

The categories in Carter's subpoenas are very broad.  For example, category no. 6 of the records subpoena seeks:

> All correspondence, emails, memoranda to the file, or other documents between the Bank and HUD regarding the Beechgrove projects from loan inception to the current date.

Rec. doc. 67 (Exhibit A).  Regions may have to spend considerable time to review documents and e-mail over a multi-year period between it and HUD to determine which ones are related to the Beechgrove projects. While Regions may not withhold the documents based on Section 333(I)(2), some of the documents may be subject to the attorney-client privilege.  As the categories are presently worded, Regions may have to prepare a privilege log.  Carter will have to bear these costs. It is urged that Carter pare down its categories for the internal evaluation and analysis documents to only what is required for its cross-examination of Carroll.

If Carter seeks the Beechgrove documents from Regions after obtaining the authorization from Beechgrove, it shall reimburse Regions for the cost of producing the Beechgrove documents.

At the conclusion of the production, Regions and Carter shall attempt to agree on Regions' costs.  If they are unable to do so, Regions shall submit a motion for reimbursement of its costs.

## DATE OF PRODUCTION

The court will not set a deadline for Regions to produce the documents.  Instead within ten (10) working days Regions and Carter shall meet and confect an agreed on schedule for the

6

production of the documents.  If they are unable to agree, then within ten (10) working days of the

entry of this order, they shall submit separate schedules.  The one that most nearly meets the needs

of the case will be used.

IT IS ORDERED that: (1) the motion Regions for  a protective order (Rec. doc. 58) is

DENIED; and (2) the motion to quash subpoena duces tecum (Rec. doc. 59) is GRANTED in PART

and DENIED in PART in accord with the terms of this order.  If Regions appeals from this order,

all deadlines are stayed until the resolution of its appeal.

New Orleans, Louisiana, this 11th day of April, 2008.

**SALLY SHUSHAN**
**United States Magistrate Judge**