```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA


BEECHGROVE REDEVELOPMENT, LLC              CIVIL ACTION

VERSUS                                     NO: 07-8446

CARTER & SONS PLUMBING, HEATING,           SECTION: J(1)
AND AIR-CONDITIONING, INC. ET AL
```

### ORDER AND REASONS

Before the Court is Defendant Carter & Sons' ("C&S") **Motion for Summary Judgment as to Beechgrove's Claims for Attorney's Fees and Foreclosure Damages** (Rec. Doc. 164), seeking dismissal of Plaintiff Beechgrove Redevelopment, LLC's ("Beechgrove") claims for attorney's fees arising out of their present Chapter 11 bankruptcy proceedings as well as the foreclosure damages resulting from the foreclosure proceedings instituted by AmSouth/Regions Bank ("AmSouth/Regions") against Beechgrove.

### PROCEDURAL HISTORY AND BACKGROUND FACTS

Beechgrove's claims in this case arise out of a fire that was allegedly caused by employees of C&S who were performing plumbing work in Building # 972 at an apartment complex owned by Beechgrove. Beechgrove contracted with Moss Creek Development ("MCD") in August of 2002 for renovation of the building, and MCD in turn sub-contracted with C&S for some of the plumbing work. This renovation work was funded in part by a construction loan from AmSouth/Regions. During the course of the work performed by

C&S in May of 2004, the apartment complex was destroyed by fire. After the May 2004 fire, Beechgrove filed suit against C&S (amongst others) in the 24th Judicial District Court for the Parish of Jefferson on May 9, 2005, seeking past, present, and future economic loss damages as a result of the fire.

After the fire and the resulting construction delays and financing problems, AmSouth/Regions filed suit on August 2, 2007, to foreclose on all of Beechgrove's property. In order to avoid or mitigate its foreclosure damages, Beechgrove filed for Chapter 11 reorganization on October 24, 2007 in the Bankruptcy Court for the Eastern District of Louisiana. Accordingly, Beechgrove's state court suit was removed to this Court by Beechgrove on November 9, 2007 (Rec. Doc. 1) in connection with the pending voluntary bankruptcy proceedings.[1] In addition to the damages originally claimed in the May 2005 lawsuit, Beechgrove also seeks the attorney's fees incurred in its Chapter 11 bankruptcy proceedings, as well foreclosure damages.

Beechgrove asserts that C&S is responsible for these fees and damages as a result of its negligence in causing the fire and refusing to repair the fire damages, which eventually caused the foreclosure on the property due to substantial delays in the renovation project after the fire. C&S now seeks summary

---

[1] The Bankruptcy Court confirmed Beechgrove's Plan of Reorganization by Order of December 3, 2008.

judgment on its liability for the fees and foreclosure damages.

## **THE PARTIES ARGUMENTS**

The gist of C&S's argument is that attorneys' fees are recoverable under Louisiana law only if there is a contractual provision or statute allowing for recovery of such fees. See Joseph v. Entergy, 972 So. 2d 1230, 1237 (La. App. 4 Cir. 2007). Initially, C&S argues that there is no statutory grounds for attorneys fees. In addition, because C&S was a mere subcontractor with MCD, there was no contract between C&S and Beechgrove, and thus no contractual grounds for attorneys fees.

Further, C&S argues that Beechgrove was not a third party beneficiary of the MCD-C&S contract. In support of this argument, C&S notes that third party beneficiary status, if not expressly provided for in a contract, only arises if the benefit to the purported third party beneficiary formed part of the consideration for the contract. See Concept Designs, Inc. v. J.J. Krebs & Sons, Inc. 692 So. 2d 1203, 1205-06 (La. App. 4 Cir. 1997). However, C&S argues that Beechgrove's benefit in the MCD-C&S contract was merely incidental, thus precluding third party beneficiary status. Id.

Finally, C&S argues under general Louisiana tort law principles that Beechgrove's claims for attorneys fees and foreclosure damages as a result of the fire are unfounded because Beechgrove was in serious financial trouble long before the fire.

C&S bases this allegation in part on the testimony of an MCD representative (Reginald Walker) who testified that MCD was paid late for its work.  Thus, C&S argues that the fire was not the proximate cause of Beechgrove's bankruptcy/foreclosure, but that Beechgrove's own prior financial difficulties were a "separate, independent, and intervening act for which [C&S] was in no way responsible."  <u>Jenkins. v. Lindsey</u>, 693 So. 2d 238, 240 (La. App. 4 Cir. 1997).

In opposition, Beechgrove argues that its does not seek attorneys' fees as a matter of contract or statute, but rather as an *independent item of damages* that resulted from C&S's negligence in causing the fire that ultimately destroyed the complex.  First, Beechgrove cites the maxim that a tortfeasor takes his victim as he finds him, and therefore even if Beechgrove was experiencing financial difficulties prior to the fire, C&S nonetheless is responsible for all of the consequences of its tortious conduct.  Further, Beechgrove claims that it was not experiencing financial difficulties prior to the fire, and in fact had acquired an up-front HUD loan as well as financing from AmSouth/Regions for the apartment renovations.  According to Beechgrove, it was only the fire and resulting project delays that caused the failure of the HUD and AmSouth/Regions financing and the eventual foreclosure and bankruptcy.  In addition, Beechgrove argues that Reginald Walker's testimony regarding late

4

payments is misleading because under both the HUD General Conditions and AmSouth/Regions Loan Agreement, payments were required not on *completion* of work, but rather on *certification and acceptance* of the work by the Project Architect and HUD, along with supporting documentation from the contractors.

Additionally, Beechgrove cites the Fifth Circuit's decision in FDIC v. Barton, for the proposition that under Louisiana law "fees incurred in bankruptcy have been allowed as damages for the wrongdoing that caused the bankrupcty." 233 F.3d 859, 865 (5th Cir. 2000). Thus, Beechgrove asserts that C&S's argument that attorney's fees are recoverable only as a matter of contract or statute is irrelevant because Beechgrove is not seeking fees as a matter of *contract*, but rather as an *element of tort damages*. Therefore, because the issue of causation of Beechgrove's damages, and in turn its eventual bankruptcy, will necessarily turn on the totality of the circumstances, Beechgrove argues that C&S's motion should be denied because significant issues of material fact regarding causation remain unresolved.

C&S has also filed a supplemental memorandum along with 10 exhibits in further support of its motion. The supplement focuses mostly on the deposition testimony of Bill Carroll, Vice President of AmSouth/Regions Bank, which C&S suggests is the best evidence with respect to what caused Amsouth/Regions to foreclose on their loan to Beechgrove. Essentially, Carroll's testimony,

along with various loan change, forms indicates a progressively declining rating for Beechgrove's risk status from 2003 to 2007, and allegedly reveals that Beechgrove was steadily worsening in terms of its financial viability over the entire course of the apartment renovation project.

Initially, Carroll noted that the Beechgrove loan was recognized as a risk and transferred to the Special Assets Group as early as August of 2003, with a risk rating of 41/100 indicating an acceptable risk. However, the risk was downgraded to 50 in May of 2003 due to ineffective project management and delays. After the management problems and delays were discovered to be more systemic, the grade was lowered even further in August of 2003 to a level of 60 (indicating that further deterioration was certain to occur without changes in the loan course). Also, Carroll testified that AmSouth/Regions' main justification for initially granting the $9 million loan was an agreement between HUD and Beechgrove that HUD would contribute almost the full $9 million dollar cost of the project through grants. However, HUD eventually did not contribute the agreed upon amount, which C&S argues resulted in the eventual foreclosure by AmSouth/Regions. Furthermore, Carroll noted significant delays, management problems, and the inability of Beechgrove to pay out-of-pocket costs between draws from the loan as reasons for risk downgrades. Finally, Carroll noted damage from Katrina, *a separate fire* from

6

the one at issue in this case, as well as diminished rental potentials after Katrina, as even further grounds for risk downgrades.  The final risk downgrade in April of 2007 lowered the grade to a 75 and precipitated the foreclosure at issue in this case, which Carroll testified was due in most significant part to the eventual HUD financing failure.  Thus, C&S argues that this evidence reveals that Beechgrove's own inherent financial problems, and not the fire that eventually preceded the foreclosure and bankruptcy, were the proximate cause of the foreclosure and bankruptcy.  Therefore, C&S argues that it is entitled to judgment as a matter of law dismissing Beechgrove's claims for bankruptcy attorney's fees and foreclosure damages because there are no material facts in dispute.

In opposition to C&S's supplemental memorandum, Beechgrove notes initially that due to unavoidable scheduling conflicts for its counsel, Carroll was not subject to cross-examination at his deposition.[2]  Thus, Beechgrove questions C&S's reliance on this unilateral deposition of a friendly witness.  Nonetheless,

---

[2] Specifically, Beechgrove's counsel was unexpectedly held over in an open trial in the Civil District Court, Parish of Orleans, State of Louisiana, at the time of Carroll's deposition. Furthermore, Beechgrove's counsel, a sole practitioner, was the only attorney approved by the United States Bankruptcy Court for the Eastern District of Louisiana to represent Beechgrove, and as such was unable to associate counsel in this case.  As a result, since Carroll had already traveled to New Orleans for the deposition when Beechgrove's counsel learned of the conflict and since the deposition was intended for discovery purposes only, Beechgrove's counsel agreed to allow the deposition to proceed.

Beechgrove asserts that even if Carroll's deposition is taken at face value, C&S is still not entitled to judgment as a matter of law on the issue of attorneys' fees and foreclosure damages.

First, Beechgrove notes that Carroll himself testified at his deposition that AmSouth/Regions would not even begin considering foreclosure until the risk rating dropped to at least 70. Thus, Beechgrove argues that since the risk rating did not fall to 70 until *after* the fire, there is no evidence (or at the very least there is a question of fact) as to whether Beechgrove was in dire financial straits *prior* to the fire in May of 2004. Additionally, Beechgrove notes that Carroll's testimony as the officer of Beechgrove's creditor is not unbiased. As such, Beechgrove argues that Carroll's credibility is at issue, and should be determined by the jury, and not by this Court on summary judgment. Finally, Beechgrove has attached several documents that all tend to indicate that the financing for the apartment renovation project was proceeding smoothly both *before and even after* the fire. Most importantly, Beechgrove notes an extension by HUD of the time within which to complete the Beechgrove project *after the fire*, as well as an extension of the term of the AmSouth/Regions construction loan *after the fire*. As a result, Beechgrove argues that neither C&S's initial memorandum, nor the supplemental memorandum relying on Carroll's testimony, has revealed a lack of material fact issues that would

8

render summary judgment appropriate on the issue of attorneys' fees and foreclosure damages. As such, and given that substantial issues of fact still remain regarding the causation of the foreclosure and Beechgrove's bankruptcy, Beechgrove argues that C&S is not entitled to summary judgment.

## DISCUSSION

**A. Summary Judgment Standard**

Summary judgment is appropriate if "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). If that burden has been met, the non-moving party must then come forward and establish the specific material facts in dispute to survive summary judgment. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 588 (1986). Generally, under Louisiana law, causation in tort cases is a question of fact that is inappropriate for disposition upon summary judgment. <u>Miller v. Mr. B's Bistro, Inc.</u>, 2005 WL 2036780 (E.D. La. 2005) (citing <u>Estate of Adams v. Home Health Care of La.</u>, 2000-2494 (La.12/15/00), 775 So.2d 1064, 1064).

**B. Bankruptcy Fees as a Proper Element of Damages**

"In Louisiana, attorney's fees usually are not allowed in

9

civil actions in the absence of a statute or contract." <u>FDIC v. Barton</u>, 233 F.3d 859, 865 (5th Cir. 2000). However, the Fifth Circuit has held as a matter of Louisiana law that "fees incurred in bankruptcy have been allowed as damages for the wrongdoing that caused the bankruptcy." <u>Id</u>. (citing <u>Pelts & Skins Export, Ltd. v. State Dep't of Wildlife & Fisheries</u>, 735 So.2d 116, 128 (La. Ct. App. 1999)). In <u>Pelts & Skins</u>, the Louisiana appellate court affirmed an award of attorney's fees incurred in bankruptcy proceedings, holding that the tortious actions of the defendant had caused the plaintiff to enter Chapter 11 voluntary bankruptcy. 735 So. 2d at 127-128.

Similarly, Beechgrove may be entitled to claim attorney's fees incurred in its Chapter 11 bankruptcy proceedings if the allegedly tortious actions of C&S's employees caused Beechgrove's eventual bankruptcy. Thus, while C&S is correct that attorney's fees are generally only recoverable under Louisiana law pursuant to a statute or a contractual provision, to the extent that Beechgrove's attorney's fees constitute *damages* resulting from C&S's negligence in causing the fire at the Beechgrove apartment complex, those fees are a proper element of damages in this case. Thus, C&S's argument that, as a matter of Louisiana law, Beechgrove cannot recover its attorney's fees incurred in the post-fire voluntary bankruptcy is unavailing.

Furthermore, and with regard to C&S's factual argument for

10

summary judgment, C&S cannot conclusively show on the present summary judgment record that the fire allegedly caused by its employees did not proximately cause Beechgrove's bankruptcy. Stated differently, C&S cannot show based on the summary judgment evidence before the Court that Beechgrove's bankruptcy was caused exclusively by Beechgrove's pre-fire financial difficulties. First, the meager showing in C&S's initial supporting memorandum cites only the deposition testimony of Reginald Walker to the effect that Beechgrove did not pay MCD's bills on time. This testimony reveals only that Beechgrove made late payments, and does not indicate in any conclusive way that Beechgrove was inevitably approaching foreclosure prior to the fire. Furthermore, Beechgrove's opposition asserts that these allegedly late payments were not a result of stretched finances, but were rather a requirement for compliance with the terms of the Regions/AmSouth loan and the HUD grant that were used to fund the renovation project. Thus, the bare testimony of Walker, in the face of Beechgrove's opposition, does not meet C&S's burden of showing a lack of material issues of fact as to the causation of Beehcgrove's bankruptcy.

In addition, C&S's supplemental memorandum in support of its motion does not remove all issues of fact regarding the causation of Beechgrove's bankruptcy. First, while Carroll's testimony indicates a steadily declining risk rating over the course of the

Beechgrove loan, he also stated that the bank does not begin considering foreclosure until the rating reaches at least 70.[3] However, as indicated in the risk-rating change forms attached to C&S's supplemental memorandum, the risk rating for the Beechgrove loan did not reach 70 (the foreclosure level) until more than a year *after* the May 2004 fire.[4] Additionally, while Carroll did testify that the failure of the HUD financing was a crucial factor in the foreclosure decision by AmSouth/Regions, this failure did not occur until *nearly three years after the May 2004 fire* when HUD refused to forward approximately $2 million remaining on the Beechgrove project grant.[5] Thus, C&S's reliance on Carroll's testimony for the proposition that Beechgrove was well on its way to foreclosure *before* the fire is actually belied by the testimony itself, which shows that foreclosure was not imminent until years after the fire when HUD withdrew funding. Additionally, Beechgrove has provided evidence that HUD actually

---

[3] Specifically, Carroll testified that "when [the risk ratings] get into the 70's, that's when the risk is elevated enough that it would be something that we would look at in terms of what sort of an exit strategy we would have." Rec. Doc. 196, Ex. A, 19.

[4] See Rec. Doc. 195-10 (indicating a risk rating change from 60 to 70 on October 12, 2005).

[5] As noted in Carroll's deposition, the Beechgrove loan risk rating was lowered from 70 to 75 on April 12, 2007, after project delays caused HUD to delay funding an additional amount of approximately $2 million on its grant for the Beechgrove project. See Rec. Doc. 195-5 at 148 & Rec. Doc. 195-11.

informally *extended* the completion term for the Beechgrove grant *indefinitely* after the May 2004 fire, but then issued a letter setting a specific extension term of July 31, 2006 in connection with AmSouth's request for a specific date.[6]  Regardless, this evidence shows that HUD did in fact extend the completion term *after the fire*, which suggests that the fire may have been the eventual cause of the foreclosure.  Furthermore, Beechgrove has also provided evidence of two *post-fire* amendments to the Beechgrove loan by AmSouth/Regions, which further suggests that the fire, and not Beechgrove's pre-fire financial problems, was the cause of the foreclosure.  In sum, this summary judgment record reveals significant issues of material fact regarding the causation of Beechgrove's bankruptcy and the foreclosure by AmSouth/Regions.  Whether the bankruptcy and foreclosure were caused by the fire or by Beechgrove's management difficulties is a question of fact that cannot be decided on this summary judgment record and must be left to the jury in this case.  Accordingly, C&S's Motion for Summary Judgment on the issue of its liability for Beechgrove's attorney's fees incurred in the post-fire bankruptcy must be denied.

    **C.    Foreclosure Damages as a Proper Element of Damages**

---

[6] This date-certain extension was required by AmSouth in connection with a forbearance agreement in the Beechgrove construction loan.

13

C&S's only argument for summary judgment on Beechgrove's claim for foreclosure damages[7] is based on the same facts as the argument for summary judgment of the bankruptcy attorney's fees claim - namely that the foreclosure on the Beechgrove loan was

---

[7] There is no indication in the parties' pleadings as to the specific nature of Beechgrove's claim for "foreclosure damages." Further, the Court was unable to locate any Louisiana or Fifth Circuit cases that refer expressly to "foreclosure damages" as an appropriate element of damages. However, because C&S has not disputed that "foreclosure damages" are an appropriate element of damages as a matter of law, the Court will assume that the parties agree that "foreclosure damages," to the extent they may be proven at trial, are an appropriate element of damages in this case.

    The Court did locate the analogous decision of the Fifth Circuit in State Farm Mut. Auto. Ins. Co. v. Smoot, 381 F.2d 331 (5th Cir. 1967). The claims in Smoot had their origin in a car accident in which Mr. Smoot rear-ended another vehicle causing a five-car accident. Id. at 333. One of the other drivers incurred injuries and filed suit against Smoot, who had since been stationed in Guam in connection with his service in the military. Id. State Farm, Smoot's insurer, handled the case poorly, resulting in a personal judgment against Smoot for the excess of the judgment beyond his State Farm policy limits. Id. at 334. As a result, Smoot sued State Farm for negligently handling his claim, and won a damage award that included an amount in special damages of $10,000 as a result of eventual foreclosure on his home due to the outstanding judgment against him caused by State Farm's negligence. Id. at 338. In affirming this award, the Fifth Circuit held that:

> Smoot testified that he tried to sell his house on moving from Savannah in 1960, but was unable to do so because the Donaldson judgment constituted a lien against it. Later he lost the house for inability to meet the payments, and as a result of foreclosure by FHA his credit was destroyed. Thus, the $10,000 special damages prayed for and awarded cannot be said to be without evidentiary support.

Id. Based on the Smoot decision, the Court concludes that Beechgrove's claim for "foreclosure damages" is appropriate.

caused by Beechgrove's management practices and not by the fire that destroyed the property.  For the same reasons outlined above, C&S's argument for summary judgment on Beechgrove's claim for  foreclosure damages also fails because significant issues of fact regarding the causation of the foreclosure remain to be determined by the factfinder.  Additionally, C&S has cited no legal authority other than the fact-based general tort theory of proximate causation to support its claim that Beechgrove is not entitled to foreclosure damages as a matter of law.  Thus, for the same reasons stated above, C&S is not entitled to summary judgment on Beechgrove's claim for foreclosure damages. Accordingly,

**IT IS ORDERED** that C&S's **Motion for Summary Judgment as to Beechgrove's Claims for Attorney's Fees and Foreclosure Damages** (Rec. Doc. 164) is **DENIED.**

New Orleans, Louisiana this 9th day of January, 2009.

CARL J. BARBIER
UNITED STATES DISTRICT JUDGE