UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

BEECHGROVE REDEVELOPMENT,
L.L.C.

VERSUS

CARTER & SONS PLUMBING,
HEATING AND AIR-
CONDITIONING, INC. ET AL

CIVIL ACTION

NO: 07-8446

SECTION: J(1)

## ORDER AND REASONS

Before the Court is Carter & Sons' ("Carter") **Motion for Summary Judgment as to the Claims of Moss Creek Development Company, Inc., and Moss Creek/Barton Malow, A Joint Venture (Rec. Doc. 163)**, seeking a dismissal of Moss Creek Development Company's ("MC") and Moss Creek/Barton Malow's ("the Joint Venture") claims against Carter for indemnity and damages under a series of contracts and subcontracts. Scottsdale Insurance Company, MC's general commercial liability insurer and defendant in this case, has joined in the opposition of MC and the Joint Venture to Carter's motion (Rec. Doc. 206). Upon review of the record, the memoranda of counsel, and the applicable law, the Court finds as follows.

## PROCEDURAL HISTORY AND BACKGROUND FACTS

The various claims in this case arise out of a series of contractual relationships centering on the renovation project at the Beechgrove Phase I apartment buildings in Westwego,

Louisiana. The underlying claim by Plaintiff Beechgrove arises from a fire that was allegedly caused by employees of Carter who were performing plumbing and HVAC system work in Building # 972 of the Beechgrove apartment buildings as part of the renovation project.

Initially, Beechgrove contracted with MC in August of 2002 for renovation of the apartment buildings ("Restoration Contract") in the Phase I complex, which included Building # 972. MC in turn sub-contracted with the Joint Venture ("Prime Contract") to sublet the work on the Restoration Contract. The Joint Venture then sub-contracted with Carter to perform the plumbing and HVAC work ("HVAC Subcontract") that allegedly led to the fire that destroyed Building # 972.[1] After the May 2004 fire, Beechgrove filed suit against Carter, MC, and various insurers in the 24th Judicial District Court for the Parish of Jefferson ("24th JDC") on May 9, 2005, seeking past, present, and future economic loss damages as a result of the fire.

After the fire and the resulting construction delays and financing problems, on August 2, 2007, Regions Bank, Beechgrove's construction loan lender, filed suits to foreclose on all of Beechgrove's property. In order to avoid or mitigate its

---

[1]    MC and the Joint Venture assert that Carter does not dispute the fact that its employees started the fire that destroyed Building # 972. Carter has not conceded this fact in any of the pleadings relevant to the present motion.

2

foreclosure damages, Beechgrove filed for Chapter 11
reorganization (voluntary bankruptcy) on October 24, 2007 in the
Bankruptcy Court for the Eastern District of Louisiana.
Accordingly, Beechgrove removed its state court suit to this
Court on November 9, 2007 (Rec. Doc. 1) in connection with the
pending voluntary bankruptcy proceedings.[2]

Meanwhile, MC and the Joint Venture had filed their own suit
in the 24th JDC based on the above-described facts, which had
been consolidated with Beechgrove's state court suit, seeking
damages and indemnity against Carter and its insurer for their
failure to pay for restoration after the fire.  Thus, when
Beechgrove removed its suit to federal court, MC and the Joint
Venture sought (Rec. Doc. 68)  and obtained leave (Rec. Doc. 69)
to pursue their claims against Carter and various insurers in
this Court.  As such, MC was allowed to file a cross-claim
against Carter and its insurer, and the Joint Venture was allowed
to intervene as a plaintiff against Carter and Carter's insurer
(Rec. Doc. 82).  Thus, in the present federal court litigation,
MC is both a cross-claimant and principal defendant, and the
Joint Venture is simply a plaintiff in intervention and not a
party to the principal action.  MC and the Joint Venture claim
damages for lost profits, increased costs, as well as un-

---

[2]  The Bankruptcy Court confirmed Beechgrove's Plan of
Reorganization by Order of December 3, 2008.

recovered overhead, attorney's fees, and costs resulting from
delay in completion of the Phase I project due to Carter's
negligence in causing the fire and subsequent failure to
remediate the fire damage.  In addition, MC and the Joint Venture
seek indemnification from Carter against Beechgrove's claims.

## THE PARTIES' ARGUMENTS

### A.    Carter's Summary Judgment Arguments

Carter seeks summary judgment on MC and the Joint Venture's
claims for their own damages due to Carter's negligence, as well
as their claims for indemnification allegedly arising out of the
HVAC Subcontract for any liability on their part as to
Beechgrove's claims.  Carter initially notes that MC was not a
party to the HVAC Subcontract, which was negotiated between
Carter and the Joint Venture only.  Carter also points out as an
initial matter that the Joint Venture is not a defendant in these
proceedings.  Finally, Carter notes that because Louisiana Civil
Code Article 2056 requires that ambiguous contractual provisions
must be construed against the drafter of the contract, any
ambiguous provisions in the HVAC Subcontract must be construed
against MC and the Joint Venture.

Based on these facts, Carter argues first that there was no
privity of contract between MC and Carter, and thus MC is not
entitled to lost profits, costs, or indemnity from Carter.

Carter argues under Louisiana law that privity is required for both breach of contract claims and detrimental reliance claims. <u>La. Ins. Guar. Assoc. v. Rapides Parish Police Jury</u>, 182 F.3d 326, 331 (5th Cir. 1999); <u>ARK Entm't., LLC v. C.J. Gayfer & Co., Inc.</u>, 1999 WL 717631, *2 (E.D. La. 1999). Further, Carter argues that since joint ventures are treated as partnerships under Louisiana law, and since a partnership/joint venture is a distinct entity separate from its members, MC cannot claim indemnity from Carter by resorting to its identity as an individual member in the Joint Venture. Thus, because no contract existed between Carter and MC, Carter contends that MC has no basis for its claim of indemnity, lost profits or any other contract-based damages.

Relatedly, and since Louisiana law only allows recovery of attorney's fees pursuant to a contract or statute, Carter argues that no statute or contract is in effect to allow MC to collect attorney's fees from Carter. As for the Joint Venture's claim for fees, Carter argues that the HVAC Subcontract requires that Carter indemnify the Joint Venture for attorney's fees only if they relate to a "claim, cause of action, or lawsuit or proceeding requiring indemnity by the Subcontractor [i.e. Carter]." See Exhibit A, Section 16.2.1. However, since the Joint Venture is not a defendant in Beechgrove's lawsuit, and thus cannot be cast in judgment, Carter is not required to

provide indemnity because there can be no less for which to indemnify the Joint Venture.

As for MC and the Joint Venture's claims for increased costs and "overhead," Carter maintains that both have waived those claims in their discovery responses and/or corporate depositions.

In addition, and as to the Joint Venture's claims for indemnity, Carter argues that because the Joint Venture is not an actual defendant in this matter, Carter cannot owe it indemnity since it cannot be cast in judgment in this case.

Furthermore, and with respect to the indemnity claims of both MC and the Joint Venture, Carter asserts that the claims are too speculative. Specifically, Carter argues that a separate and intervening act besides its alleged negligence in causing the fire resulted in MC and the Joint Venture's loss of profits, namely Beechgrove's *unrelated* decision to proceed without them. Carter argues that MC and the Joint Venture's demobilization and closure of the job site due to Beechgrove's non-payment of invoices, as well as the federal indictment of MC's owner Reginald Walker in the midst of the renovation project, were independent reasons unrelated to the fire that led Beechgrove to discontinue its contract with MC and the Joint Venture.

### B.   MC & the Joint Venture's Opposition

MC and the Joint Venture's Opposition focuses almost exclusively on the actual language of the HVAC Subcontract, which

they note was pronouncedly absent from Carter's memorandum in support of its motion. Essentially, MC and the Joint Venture argue, under the extensive indemnification terms of the HVAC Subcontract, that Carter agreed to indemnify both its direct contractor the Joint Venture, *as well as* the Joint Venture's direct contractor MC.

In terms of the facts, MC and the Joint Venture argue that Carter's negligence (allegedly admitted) in causing the fire at Building # 972 (see fn. 1) resulted in $1.2 million of damage to Building # 972. This amount constituted the cost for restoring the building to its pre-fire state. MC and the Joint Venture assert that they lost the Restoration Contract with Beechgrove because Carter and its insurer failed to pay this $1.2 million in restoration costs, which delayed the overall renovation project by preventing Building # 972 from serving as a temporary placement for tenants from other buildings in the complex while their buildings were renovated. MC and the Joint Venture point to the deposition testimony of Beechgrove's project manager Larry Barnett, which indicates that the fire and resulting delays were the only basis for Beechgrove's decision to complete the project without MC and the Joint Venture.[3] Further, Barnett testified

---

[3] See Deposition Testimony of Larry Barnett, pp. 52-53, Rec. Doc. 205-3, pp. 19-20.

Q. When is it that this decision was made to switch

that Reginald Walker's indictment had nothing to do with

Beechgrove's decision to discontinue the contract with MC and the

Joint Venture.[4]  In addition, MC and the Joint Venture note that

the Jefferson Housing Foundation ("JHF") (the entity which

replaced MC and the Joint Venture in the restoration project)

received approval for payment applications to HUD for its work on

the Beechgrove project *except for applications involving work on*

*Building # 972.*[5]  MC and the Joint Venture suggest that since the

JHF applications for payment to HUD were approved, there is no

reason why they would not also have been paid for their work by

HUD *if Carter's negligence had not caused them to lose the*

*contract.*  As a result, MC and the Joint Venture have asserted a

---

        contractors for these buildings?
        . . .

        A.  From the fire, there were numerous meetings between
        the managing partner and the contractor, Phase I
        contractor.  And there was [sic] several attempts to
        reach what is, as I understand, is a memorandum of
        understanding as to how we were going to proceed.  And we
        reached a point in time that the memorandum of
        understanding was never consummated.

            And so the managing partner just decided that enough
        is enough and we need to go on and get the building
        complete, because the bank wants to have a finished
        product.  And the decision was made to stop arguing with
        – with the contractor, exercise our rights to reduce your
        scope of work, and we were going to go ahead on and do
        the buildings.

[4]  Id. at 57.

[5]  See Deposition Testimony of Elvettra Gibbs, p. 21 Rec.
Doc. 205-3, p. 24

claim against Carter for the $1.1 million owed by Beechgrove for work completed prior to the fire and Beechgrove's discontinuation of the contract, as well as lost profits claim of $312,000 (based on the 13% profit margin built into the contract as applied to the $2.4 million left to be completed under the Restoration Contract). In addition, MC and the Joint Venture seek litigation expenses as well as costs for hiring a third-party consultant to review the building condition and the costs for Barton Malow's own investigation in support of the claims in this case. These latter amounts are presumed by MC and the Joint Venture to be the "overhead" damages referred to in Carter's motion.

Based on these factual allegations, MC and the Joint Venture point to the express provisions of the HVAC Subcontract in opposition to Carter's motion. Specifically, in response to Carter's privity argument, MC and the Joint Venture contend that the HVAC Subcontract signed by Carter expressly required Carter to indemnify both the Joint Venture as the obligee in the HVAC Subcontract, as well as MC as the obligee in the Prime Contract. Under these provisions, MC and the Joint Venture argue that Carter agreed to pay for any loss it caused arising out of the HVAC Subcontract to either MC and/or the Joint Venture, regardless of privity. Further, MC and the Joint Venture assert that these express provisions also defeat Carter's argument that the Joint Venture cannot be indemnified since it has not been

sued in this case. MC and the Joint Venture note that Carter has
cited no law to support this theory, and that the HVAC
Subcontract does not require that an indemnitee be sued for the
indemnity provision to apply. In sum, MC and the Joint Venture
argue that the HVAC Subcontract provides that "[i]f Carter causes
a loss, Carter has to pay for it, both to Moss Creek and MC/BM."
Memo Opp. Summ. J., 15 (Rec. Doc. 205).

As for Carter's argument that any claims for lost profits
damages are speculative, MC and the Joint Venture again cite the
testimony of Larry Barnett that the fire alone caused Beechgrove
to discontinue the contract. Further, MC and the Joint Venture
argue that they were not required to mitigate their damages
because the $1.2 million amount required for fire repairs was too
substantial and beyond their means. Abercrombie v. Pierret
Realty & Constr., 532 So. 2d 212 (La. App. 3 Cir. 1988). MC and
the Joint Venture note that under Louisiana law, a defendant
cannot assert a defense of failure to mitigate when the defendant
had equal opportunity to correct the problems but refused.
Unverzagt v. Young Builders, Inc., 215 So. 2d 823 (La. 1968).
Finally, MC and the Joint Venture argue that despite the
existence of the various contracts among the parties, Carter may
still be directly liable in tort for the damages, including loss
of use, caused by its negligence in starting the fire that
destroyed Building # 972. Further, Carter's insurer may also be

10

liable for loss of use as consequential tort damages absent a specific exclusion.  As such, MC and the Joint venture argue that Carter has not met its summary judgment burden on the issue of whether their damages are overly speculative.

Finally, as to Carter's argument regarding the "overhead" damages claim, MC and the Joint Venture argue that the motion is ambiguous and therefore improper.  Specifically, MC and the Joint Venture contend that while they admitted in their respective corporate depositions that they do not seek loss of "overhead" for *work not performed* after Beechgrove withdrew from the contract, they do seek various expenses incurred as a result of the fire allegedly caused by Carter.  These expenses would include the costs for third-party consultations and internal investigations and estimations after the fire.  As such, MC and the Joint Venture assert that Carter's ambiguous grounds for dismissing the so-called "overhead" damages claim preclude summary judgment.

In response, Carter argues that MC and the Joint Venture's indemnity argument under the HVAC Subcontract (between the Joint Venture and Carter) is improper because they have not supplied the Court with a copy of the Prime Contract (between MC and the Joint Venture).  As such, because the indemnity provision in the HVAC Subcontract necessarily implicates the substance of the Prime Contract, Carter argues that the indemnity argument is

improper on the present record. Further, Carter argues that even if the Prime Contract were before the Court, Louisiana law requires that ambiguous contract provisions be construed against the entity that furnished the text. La. Civ. Code art. 2056. As such, and because the identity and nature of the Prime Contract is ambiguous, Carter argues that the indemnity provision must be construed against MC and the Joint Venture. Further, Carter asserts that it could not logically assume *all* the work contemplated in the Prime Contract, which would include all the renovation work, when it only contracted with the Joint Venture to do plumbing and HVAC work.

MC and the Joint Venture in turn have filed a copy of the Prime Contract, which incorporates the construction contract between Beechgrove and Carter, with their surreply memorandum. Rec. Doc. 210. In addition, MC and the Joint Venture argue that the *contra proferentem* argument by Carter under Article 2056 only applies in the face of ambiguous contractual language. However, MC and the Joint Venture argue that the indemnity provisions of the HVAC Subcontract are patently unambiguous. Furthermore, MC and the Joint Venture contend that the indemnity terms of the HVAC Subcontract actually overcome the *contra proferentem* presumption by expressly providing that if a court finds any indemnification provision unenforceable, then the strictest enforceable indemnification allowed in that jurisdiction will

govern the contract. In sum, MC and the Joint Venture assert that the indemnity provisions in the HVAC Subcontract are ironclad. Further, Carter signed on to the lucrative HVAC Subcontract, notwithstanding the strict indemnity provisions, and should not now be allowed to renege on its retrospectively bad bargain.

**DISCUSSION:**

### A. Summary Judgment Standard

Summary judgment is appropriate if "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). If that burden has been met, the non-moving party must then come forward and establish the specific material facts in dispute to survive summary judgment. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 588 (1986).

### B. The Contractual Indemnity Terms

### 1) The Parties' Identities under the HVAC Subcontract

The parties main disputes in the present motion arise from the provisions of various contracts connected with the Beechgrove Apartment renovation project, most importantly Carter's HVAC Subcontract with the Joint Venture.

As an initial matter, the HVAC Subcontract provides definitions of the parties to the agreement as follows:

a)  1.3 **"Contractor" means the entity issuing this Subcontract**, which is Barton Malow Company, **unless a different entity is identified as Contractor in the Subcontract Order**. The term "Contractor" shall be used regardless of whether the actual role of the entity issuing this Subcontract is General Contractor, Construction Manager, Design Builder, or otherwise.

HVAC Subcontract, Rec. Doc. 163-6 (emphasis added). The Subcontract Order attached as the first page of the HVAC Subcontract identifies the Joint Venture as the Contractor. See Id. Thus, for purposes of the HVAC Subcontract, the Joint Venture is referred to as "Contractor."

b)  1.12 **"Owner" means the party with whom Contractor has entered into the Prime Contract with respect to the Project**, even if such party does not own the Project.

1.13 **"Prime Contract" means the contract between Contractor and Owner with respect to the Project**, including all changes or modifications thereto through the date of this Subcontract and all Contract Documents which are defined by the Prime Contract to be a part thereof.

. . .

1.15 "Project" means the project identified in the Subcontract Order
for construction, renovation, or other services.

HVAC Subcontract, Rec. Doc. 163-6 (emphasis added). Under

these provisions, the "Prime Contract" is necessarily the contract between MC and the Joint Venture, and thus the "Owner" under the HVAC Subcontract is MC.[6]  Because "Owner" in the HVAC Subcontract is defined as the party with whom the Contractor (i.e. the Joint Venture) has entered into the "Prime Contract," the "Owner" can only be MC, since MC is the only entity (besides Carter as subcontractor) that contracted with the Joint Venture in the context of the apartment complex renovation.  In turn, the "Prime Contract" under the terms the HVAC Subcontract is necessarily the one between MC as Owner and the Joint Venture as Contractor.

Furthermore, the HVAC Subcontract defines "the Project" as the project identified in the Subcontract Order, which in this case is the Beechgrove Apartments Phase I.  Thus, although "Owner" might otherwise seem to refer to Beechgrove, the owner of the property being renovated, the HVAC Subcontract's definition of "Owner" specifically provides that the "Owner" may not be the owner of the "Project."  Therefore, and as noted above, MC is the "Owner" under the HVAC Subcontract, despite the non-intuitive

---

[6]  While the term "prime contract" generally refers to the contract between the property owner and the general contractor in charge of distributing the construction work among various subcontractors, the term is specifically defined in the HVAC Subcontract as *not* referring to the contract between Beechgrove as property owner and MC as general contractor.

definition of the term "Owner."

    c)    1.19 **"Subcontractor" means the entity to which this Subcontract is issued as defined in the Subcontract Order**, including its Subordinate Parties.

HVAC Subcontract, Rec. Doc. 163-6 (emphasis added). Under this provision, and as indicated in the Subcontract Order, Carter is the Subcontractor under the HVAC Subcontract.

Thus, the identities of the parties to the HVAC Subcontract are as follows: 1) **Contractor -** the Joint Venture; 2) **Owner** – MC; 3) **Subcontractor -** Carter.  With these identities established under the terms of the HVAC Subcontract, the indemnity provisions at issue in Carter's motion can be addressed.

    **2)    The Indemnity Provisions of the HVAC Subcontract**

As an initial matter, the HVAC Subcontract includes a savings clause that purports to preserve the Joint Venture's rights in the event that any provisions of the HVAC Subcontract are found to be irreconcilable.  Paragraph 2.3 provides that "[i]f there is an irreconcilable conflict between provisions of the [HVAC] Subcontract, the provision granting greater rights or remedies to Contractor, or imposing the greater duty, standard, responsibility or obligation on Subcontractor shall govern."

HVAC Subcontract, Rec. Doc. 163-6.[7]

_____

[7] In addition, MC and the Joint Venture have alleged that, in the specific context of the indemnity provisions, the HVAC Subcontract provides the following:

> Subcontractor's obligation to indemnify shall not include any obligation to indemnify which is prohibited by applicable law. **In the event . . . [a] court of competent jurisdiction determines any of the indemnification obligations of [the HVAC Subcontract] are unenforceable, Subcontractor's obligation to indemnify shall be replaced with the strictest enforceable indemnification provision in the governing jurisdiction.**

Memo Opp. Summ. J., at 5 (emphasis added). MC and the Joint Venture point to this provision to argue that even if the indemnification provisions are ambiguous as claimed by Carter, they are nonetheless entitled to the strictest indemnity available under Louisiana law.

However, the only copy of the HVAC Subcontract that has been filed in the record, and which is in fact the one cited to by MC and the Joint Venture, _does not include this broad indemnity savings clause._ MC and the Joint Venture first cite to the HVAC Subcontract on page 3 of their opposition. This citation simply refers to "Memo. Ex. A., pp.2-3." While it is not entirely clear from the citation, this reference seems to point to Exhibit A of _Carter's memorandum_ in support of its motion for summary judgment, which is a copy of the HVAC Subcontract that includes the language quoted by MC and the Joint Venture related to the page 3 citation.

The later portion of MC and the Joint Venture's memorandum that refers to the alleged savings clause in paragraph 16.3 of the HVAC Subcontract does not include any citation. Furthermore, MC and the Joint Venture have not provided a copy of the HVAC Subcontract in any of their filings related to the instant motion. Thus the only copy of the contract upon which both parties have relied in this motion appears to be the one included in Carter's filings as Exhibit A.

The broad savings language quoted by MC and the Joint Venture in their memorandum is purportedly found at paragraph 16.3 of the HVAC Subcontract. However, in the only copy of the contract included in the record (as an exhibit to Carter's

In addition to this clause, the HVAC Subcontract also includes specific provisions outlining the Subcontractor's (i.e. Carter's) indemnity obligations.  First, the HVAC Subcontract requires Carter to indemnify the Joint Venture, the Contractor:

> 16.1  To  the  fullest  extent  permitted  by  law,
> **Subcontractor shall . . .   indemnify . . . Contractor**
> . . . against any and all liabilities, claims, causes of
> action  ,  lawsuits,  or  expenses  arising  from  (a)
> **Subcontractor's breach or failure to comply with this
> Subcontract** . . . or (b) . . . **property damage (including
> claims for loss of use**), which arise out of or result
> from  .  .  .  the  Work  or  the  operations  or  acts  of
> commission or omission of the Subcontractor . . . .

HVAC Subcontract, Rec. Doc. 163-6.

Next, the HVAC Subcontract defines Carter's indemnity obligation as extending to "all damages and judgment interest, all costs and fees, including all defense costs, expenses and

_____

memorandum in support) and cited by MC and the Joint Venture, paragraph 16.3 provides only that "Subcontractor's obligation to indemnify shall not include any obligation to indemnify which is prohibited by applicable law."  HVAC Subcontract, Rec. Doc. 163-6.  Thus, while the record copy of the HVAC Subcontract does include the same first sentence as the language cited by MC and the Joint Venture, *it does not include the broad savings language* on which they rely.

Interestingly, however, Carter has not pointed out the absence of the broad savings clause in the record copy of the HVAC Subcontract in its Reply Memorandum.

Nonetheless, counsel for MC and the Joint Venture have informed the court that the citation to the broad indemnity savings clause was actually *not included in the HVAC Subcontract.* Rather, the citation to this clause was the result of a cut-and-paste error from a form contract from which the HVAC Subcontract was derived.  As a result, the Court will disregard any argument based on this erroneously included provision.

attorney fees, and all settlement payments relating to . . . any claim . . . requiring indemnity by Subcontractor [Carter]." HVAC Subcontract, Rec. Doc. 163-6 at ¶16.2.1 In addition, the HVAC Subcontract makes Carter responsible for "[a]ll expenses, including costs, expenses and attorney fees, incurred in securing indemnity from Subcontractor [Carter] if Subcontractor [Carter] fails or refuses promptly to fulfill any of the indemnity obligations under [the HVAC Subcontract]."

Further, the HVAC Subcontract establishes Carter's responsibility to indemnify the Joint Venture for "**any liability imposed upon Contractor [the Joint Venture] to indemnify and/or defend any and all persons, including but not limited to Owner [MC]** from liabilities, claims, causes of action, lawsuits, or expenses arising from or in connection with the [HVAC Subcontract]." HVAC Subcontract, Rec. Doc. 163-6 at ¶16.2.3. Thus, this paragraph requires Carter to indemnify the Joint Venture for any liability of the Joint Venture in relation to the HVAC Subcontract, whether the liability is to MC or any other entity.

Finally, the HVAC Subcontract makes Carter responsible for indemnity directly to MC, *even though Carter did not contract directly with MC*: "Subcontractor's [Carter's] indemnity obligations shall include . . . [t]he obligation to indemnify Owner [MC] to the same extent and in the same manner as

19

Subcontractor is obligated to indemnify Contractor." HVAC Subcontract, Rec. Doc. 163-6 at ¶¶ 16.2 & 16.2.4. Thus, the HVAC Contract makes Carter directly liable for indemnity to MC just as Carter is liable in indemnity to the Joint Venture.

### 3)   The Parties' Arguments on Summary Judgment

Based on the above provisions, Carter's Motion for Summary Judgment should be denied. First, Carter is not entitled to judgment as a matter of law on the issue of indemnity in favor of MC given the other terms of the HVAC Subcontract. As for Carter's argument that MC is not entitled to indemnity because it was not a party to the HVAC Subcontract, privity of contract is not necessarily required for a binding indemnity agreement under Louisiana law. Promus Hotels Inc. v. Hadnot Hotel Props., L.L.C., 2006 WL 2505335, *3 (W.D. La. Aug. 24, 2006). In Promus, the plaintiff entered a license agreement with defendant allowing for use of the Hampton Inn service mark. Id. at *1. The agreement was terminable upon defendant's transfer of the hotel and/or loss of possession of the underlying land. Id. Defendant entered negotiations to sell the land and hotel to a third party, and as such sought a transfer of the license to the new third party. Id. Prior to the final processing of the transfer, however, defendant sold the underlying property without the consent or knowledge of plaintiff, in violation of the original licensing agreement, and plaintiff sued under that agreement.

Id. at *2. In turn, defendant sued the purchaser as a third-party defendant, asserting that the purchaser had entered an indemnity agreement whereby it agreed to indemnify the defendant for any liability arising out of the original agreement between plaintiff and defendant. Id. Further, plaintiff filed a cross-claim for indemnity against the purchaser, alleging that the purchaser also owed indemnity to defendant, and therefore was liable directly to plaintiff for any amounts due under the original agreement. Id. The Promus court refused to dismiss plaintiff's indemnity claim, relying on the Louisiana law of stipulations pour autrui in response to the purchaser's argument that it could not owe indemnity since it was not in privity with plaintiff. Id. at *3. The stipulation pour autrui, or third-party beneficiary contract, provides a "clearly contemplate[d] . . . benefit to the third person as its condition or consideration." Id. (citing Kane Enters. v. MacGregor (USA) Inc., 322 F.3d 371, 375 (5th Cir. 2003). Specifically, the Promus court held that the indemnity agreement included language that "clearly contemplate[d] the [purchaser] assuming financial obligations that the [defendant] legally owed to [plaintiff]." Id.

In the instant case, paragraphs 16.2.3 and 16.2.4 of the HVAC Subcontract expressly contemplate the possibility that Carter might owe indemnity to MC (the Owner) under the contract.

21

Thus, this provision may constitute a stipulation *pour autrui* in favor of MC by Carter. As a result, Carter's privity argument fails. Like the contract in <u>Promus</u>, the HVAC Subcontract provides that Carter will indemnify the Joint Venture for any liability it might have to MC arising out of the HVAC Subcontract. Thus, under the rationale of <u>Promus</u> and the Louisiana principles of stipulations *pour autrui*, Carter appears to have expressly stipulated the indemnity benefit in favor of MC as a non-party. "A stipulation *pour autrui* is never presumed, and the intent of the contracting parties to stipulate a benefit in favor of a third party *must be made manifestly clear*." <u>Doucet v. Nat'l Maint. Corp.</u>, 822 So. 2d 60, 66 (La. App. 1 Cir. 2002) (emphasis in original). Furthermore, "to establish a stipulation *pour autrui*, the third-party relationship must form the consideration for a condition of the contract, and the benefit may not be merely incidental to the contract." <u>Id</u>. In this case, there is at least a question of fact as to whether Carter expressly agreed to indemnify the non-party MC as a stipulation *pour autrui*, and as such summary judgment is not appropriate.

Furthermore, there is Louisiana precedent that a member of a joint venture may be entitled to indemnity based on a provision in a contract between the joint venture and a third party, *even if the member is not a named party* to the contract containing the indemnification provision. See <u>Comeaux v. C.F. Bean Corp.</u>, 750

So.2d 291, 297 (La. App. 4 Cir. 12/15/99) ("[A]lthough C.F. Bean is not a party to the charter containing the indemnification provision *C.F. Bean is entitled to indemnification*, since it's a partner in the joint venture, Bean-Weeks." (emphasis in original)).

Additionally, Carter's argument that its obligation to indemnify MC would be overly broad is unavailing. Carter essentially asserts that the HVAC Subcontract requires it to indemnify MC for all obligations that may arise out of the "Prime Contract," even those that had nothing to do with the plumbing and HVAC work that it performed. However, this is not what MC and the Joint Venture have argued, nor is it what the HVAC Subcontract says. The indemnification provision in favor of MC simply requires that Carter indemnify the Joint Venture for any liability it might have to MC *arising out of the HVAC Subcontract*. Thus, Carter's argument based on the overbreadth of the HVAC Subcontract's indemnity provision is unconvincing.

Carter's argument that indemnity in favor of the Joint Venture is precluded as a matter of law based on the non-party status of the Joint Venture may be correct. As a matter of Louisiana law, "for the most part, indemnity agreements contemplate that the indemnitee should first be cast in judgment as a prerequisite to the enforcement of an indemnity provision." Saul Litvinoff, 6 La. Civ. L. Treatise, Law Of Obligations §

11.27 (2d ed.) (citing <u>Sears, Roebuck & Co. v. Shamrock Constr.</u>
<u>Construction Co.</u>, 411 So. 2d 379, 384 (La. App. 5 Cir. 1983));
see also <u>Meloy v. Conoco, Inc.</u>, 504 So.2d 833, 839 (La. 1987)
(holding that an indemnitor is not liable under an indemnity
agreement until the indemnitee "actually makes payment or
sustains loss").  Since the Joint Venture has not been sued in
the instant proceedings, the Joint Venture cannot be cast in
judgment and has not sustained any loss.  As such, Carter should
not be liable in indemnity to the Joint Venture unless and until
the Joint Venture is cast in judgment.  The Joint Venture argues
that there is no requirement that it be named as a party in order
to invoke the HVAC Subcontract's indemnity provisions against
Carter.  However, the HVAC Subcontract's silence regarding any
suit requirement cannot abrogate the positive fundamental
principle of indemnity under Louisiana law that an indemnitee is
not entitled to indemnity unless and until he is cast in
judgment.  Thus, Carter's argument based on the non-defendant
status of the Joint Venture may preclude any indemnity under the
HVAC Subcontract as between those parties.

However, there is Louisiana precedent that "[m]embers of a
joint venture are liable for the debts of the joint venture."
<u>Freeman Decorating Co. v. Encuentro Las Americas Trade Corp.</u>,
2005 WL 2060997, *7 (E.D. La. Aug. 24, 2005) (citing <u>C.F. Bean</u>
<u>Corp.</u>, 750 So.2d at 298).  As a result, the individual members of

24

the joint venture may be liable, which may trigger the indemnity provisions as to the members. Finally, there are situations in which individual members of a joint venture may be the proper named defendants as to the joint venture itself. See <u>Am. Fid. Fire Ins. Co. v. Atkison</u>, 420 So.2d 691, 693 (La. App. 2 Cir. 1982) (finding individual joint venturers to be proper party defendants given that joint venture was defunct as a result of the joint venture's inability "to perform the obligations under the construction contracts . . . [after] default on the two contracts"). Thus, it is unclear whether Carter is entitled to summary judgment on the Joint Venture's indemnity claims *as a matter of law.* As such, summary judgment is not appropriate, given the uncertain facts and legal principles on the issue of the Joint Venture's status as a non-party and the fact that both Carter and the Joint Venture have presented such a cursory treatment of this issue.

> **C)  The Parties Arguments Regarding the Lost Profits, Attorney's Fees, "Overhead," and Increased Cost Claims**

> **1)  Lost Profits & Attorney's Fees**

Carter argues that MC and the Joint Venture's claims arising out of the fire are speculative because Beechgrove chose to forego the contract with MC and the Joint Venture due to the indictment of MC's owner Reginald Walker and MC's decision to shut down the work site due to non-payment of invoices. Also,

Carter argues that MC cannot recover lost profits or attorney's fees because it was not in privity with Carter.

As to Carter's speculation argument, the summary judgment record reveals glaring questions of material fact as to Beechgrove's true reason for discontinuing the contract with MC and the Joint Venture. In fact, MC and the Joint Venture point to deposition testimony of Larry Barnett, Beechgrove's project manager, who expressly stated that the fire, and not the indictment of Reginald Walker, led to Beechgrove's decision to discontinue the contract with MC and the Joint Venture. Thus, there is at least a question of fact as to the causation of Beechgrove's decision to forego the Renovation Contract, and Carter's argument regarding the speculative nature of MC and the Joint Venture's claims is unconvincing.

Further, and as discussed at length above, Carter is not entitled to summary judgment based on MC's lack of privity to the HVAC Subcontract. Paragraph 16.1 of the HVAC Subcontract provides the basic indemnity obligation between Carter and the Joint Venture, which includes claims for loss of use and attorney's fees. Given the question of fact as to whether Carter also stipulated indemnity in favor of MC to the same extent of its obligation to the Joint Venture, Carter's privity argument as to MC's lost profits and attorney's fees claims is unavailing.

**2) "Overhead" Claims**

26

Carter contends that MC and the Joint Venture waived their claims to so-called "overhead" damages in their respective corporate depositions. Specifically, Carter points to deposition testimony in which MC and the Joint Venture's representatives conceded that they had waived claims for "loss of overhead that [MC and the Joint Venture] might have experienced" as well as costs of "the time and expense of [MC] personnel" due to their inability to work at the Beechgrove site after the fire. Memo Supp. Summ. J., 7-8 & 10. MC and the Joint Venture respond that Carter's nebulous reference to "overhead damages" is insufficiently specific to support summary judgment. Furthermore, MC and the Joint Venture contend that while they are not pursuing claims for *work not performed under the Renovation Contract with Beechgrove* subsequent to Beechgrove's discontinuation thereof, they are seeking their expenses that resulted from the fire, such as third-party consultant fees and internal costs for reviewing and estimating building damages. Based on these conflicting positions, Carter is not entitled to summary judgment on the so-called "overhead damages" claim because there are material issues of fact regarding what these claims actually include.

### 3) Increased Cost Damages

Carter contends that MC and the Joint Venture have waived any claim for increased costs via their discovery answers and

corporate deposition testimony.  MC and the Joint Venture do not address this argument, and thus they apparently have conceded their waiver of any claims for increased costs.  As such, Carter's motion for summary judgment should be granted as to MC and the Joint Venture's claims for increased costs.  Accordingly,

**IT IS ORDERED** that Carter's **Motion for Summary Judgment as to the Claims of Moss Creek Development Company, Inc., and Moss Creek/Barton Malow, A Joint Venture (Rec. Doc. 163) is GRANTED IN PART** and **DENIED IN PART**.  The motion is **GRANTED** as to MC and the Joint Venture's claims for increased costs.  However, the motion is **DENIED** in all other respects.

New Orleans, Louisiana this <u>11th</u> day of <u>  February  </u>, 2009.


CARL J. BARBIER
UNITED STATES DISTRICT JUDGE