```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA

BEECHGROVE REDEVELOPMENT,                    CIVIL ACTION
L.L.C.

VERSUS                                       NO: 07-8446

CARTER & SONS PLUMBING,                      SECTION: J
HEATING AND AIR-
CONDITIONING, INC., ET AL
```

### ORDER AND REASONS

Before the Court is Defendant Assurance Company of America's ("ACA") **Motion for Separate Trial of the Petition (Complaint) Filed by Beechgrove Redevelopment, LLC, the Cross Claim and the Intervention Filed by Moss Creek Development Co., Inc. and Moss Creek/Barton Malow, a Joint Venture Against Assurance Company of America, and the Interpleader Filed by Assurance Company of America** (Rec. Doc. 191). Plaintiff Beechgrove Redevelopment, LLC ("Beechgrove"), and Defendants Moss Creek Development Company, Inc. ("MC"); Moss Creek/Barton Malow, a Joint Venture ("Joint Venture"); and Carter & Sons Plumbing, Inc. ("Carter") all oppose ACA's motion.

### PROCEDURAL HISTORY AND BACKGROUND FACTS

The various claims in this case arise out of a series of contractual relationships centering on the renovation project at the Beechgrove Phase I apartment buildings. The underlying claim by Plaintiff Beechgrove arises from a fire that was allegedly caused by employees of Carter who were performing plumbing and

HVAC work in Building # 972 of the Beechgrove apartment buildings as part of the renovation.

Beechgrove initially filed suit in the 24th Judicial District Court for the Parish of Jefferson ("24th JDC") against Carter, MC, and the following insurers:

> 1) Westchester Surplus Lines Insurance Company ("Westchester"), Carter's insurer;
> 2) United National Insurance Company ("UNIC"), another of Carter's insurers;
> 3) Scottsdale Insurance Company ("Scottsdale"), MC's insurer;
> 4) Steadfast Insurance Company ("Steadfast"), another of MC's insurers;
> 5) Pacific Insurance Company, Ltd. ("Pacific") Beechgrove's own property insurer; and
> 6) ACA, MC's builder's risk insurer.

After Beechgrove was forced into bankruptcy as a result of the fire, the 24th JDC action was removed to this Court in connection with Beechgrove's Chapter 11 bankruptcy proceedings. After removal, MC named Carter, Westchester, UNIC, and ACA as cross defendants and defendants in intervention as to Beechgrove's claims. In turn, ACA filed an interpleader action and deposited funds into this Court's registry for distribution among various claimants/parties to the action.

ACA was the builder's risk insurer of MC under an insurance policy allegedly covering property that had been installed or was to be installed in any commercial structure. ACA submits that the policy had limits of $315,000 as requested by MC for the Beechgrove location. This coverage allegedly covered new

construction only and excluded the existing structure which was being renovated. ACA asserts that Beechgrove received $250,518.41 from its property insurer Pacific. Also, ACA notes that is has deposited $66,321.84 plus interest and costs into the registry of this Court as proceeds from MC's builder's risk policy in connection with the pending interpleader action. This amount was based on the allegedly uncontradicted damage estimate performed for ACA based on damages at the Beechgrove site that were covered under ACA's policy of builder's risk in favor of MC.

At this point in the complex litigation described above, ACA has moved for a separate trial of both the interpleader and Beechgrove, MC, and the Joint Venture's claims against it based on its limited exposure under the builder's risk policy.

## **THE PARTIES' ARGUMENTS**

ACA argues that the $250,518.41 paid to Beechgrove by Pacific combined with the $66,321.84 deposited in the Court's registry gives Beechgrove access to $316,840.25, which is more than the $315,000 policy limits of MC's builder's risk policy with ACA. Furthermore, ACA notes that the damage estimates completed by the other insurer defendants in this matter all indicate losses of less or only slightly more than the $315,000 ACA policy limits, *including damage to the existing structure*

*which the ACA policy does not cover.*[1] Despite these estimates and ACA's policy limits, Beechgrove seeks between $1.2 and $1.4 million dollars, and MC and the Joint Venture seek $1,231,665.00.

Based on these calculations, ACA argues that its liability in this possibly million dollar litigation is specifically limited by both the $315,000 policy limits of its builder's risk policy with MC, as well as by the factual determination of which damages were covered under that policy.  As such, ACA argues that its interpleader and the various claims against it should proceed to trial separately from the main litigation based on the limited nature of those claims.  ACA argues that Federal Rules of Civil Procedure 42(b), 20, and 21 all allow this Court in its discretion to sever or separate the interpleader action and claims against ACA in the interest of judicial economy and to prevent delay and prejudice to ACA.  Specifically, ACA notes that the other claims at issue in this case are much broader in that they have no monetary limits (with the exception of the claims against Pacific), include more than property damage, and involve questions of causation of the fire.

---

[1] ACA produced two estimates for the damage to the Beechgrove building, one of $381,036.00 and one of $255,900.00. Westchester's estimate was $300,540.29, and Pacific's estimate was $275,518.41.  ACA reiterates that none of these estimates was specifically tailored to coverage under the ACA policy, which only provided coverage for property installed in the commercial structure and did not include coverage for existing buildings or structures.

4

On the other hand, ACA argues that the claims against it are very limited, both in terms of value and in terms of the covered property, do not involve issues of causation, do not involve any issue of fault in causing the fire, concern only the distribution of the $66,621.84 interpleader fund, and include a *completely separate* claim for bad faith claim handling.  Furthermore, ACA argues that Carter apparently has adequate insurance coverage such that if Beechgrove prevails against Carter, it will recover all of its damages.  In this event, Beechgrove's claims against ACA arising from the fire will become moot, and the only remaining claim would be the unrelated bad faith claim.  ACA cites several non-Fifth Circuit cases providing factors that court use to determine when severance is appropriate: 1) convenience; 2) prejudice; 3) expedition; 4) economy; 5) difference in issues; 6) whether the issues are triable by the court or by jury; 7) whether discovery has been directed to a single trial; 8) whether each issue requires substantially different evidence; 9) any unfair advantage from a separate trial; 10) confusion of the jury; and 11) advancement of settlement.  K.W. Muth Co. v. The Bing-Lear Mfg. Group, LLC, 2002 WL 1879943 (D.C. Mich. 2002).  Under these factors as well as Rule 42's considerations of avoiding delay and prejudice and Rule 20's concerns for preventing undue expense, ACA requests that the interpleader and bad faith claims be severed from the main

negligence claims in this litigation, and tried after completion of those claims.

Beechgrove opposes ACA's motion, arguing that ACA has asserted certain facts as undisputed that are in fact disputed. First, Beechgrove contends that ACA's assertion of its limited liability in this case, both in terms of monetary amount and property covered, is completely unsupported by any evidence.[2] Specifically, Beechgrove claims that the policy produced by ACA during discovery identified limits of $5,000,000 as to "[a]ll property covered at all locations." Furthermore, in contrast to ACA's assertion that its policy only covered damage to property installed by MC, Beechgrove argues that the policy includes coverage for "[p]roperty of others for which [MC was] legally responsible." Under this provision, and because MC was responsible for the entire building that burned down, Beechgrove argues that ACA is liable for the entire loss under the policy. Finally, under the Additional Coverage section, ACA is responsible for physical loss to the building involving "collapse" resulting from "fire" or "use of defective . . . methods in construction, remodeling, or renovation if the

---

[2] While ACA alleges that it was MC's builder's risk insurer, Beechgrove contends that ACA was actually its builder's risk insurer. Although there is no copy of any contract of insurance in the record, ACA was presumably MC's builder's risk insurer with a provision naming Beechgrove as an additional assured under the policy.

collapse occurs during the course of construction, remodeling, or renovation." Beechgrove argues that this provision will require a jury to determine whether a "collapse" occurred as defined by the policy and whether ACA is therefore liable under the policy.

Based on all these factual disputes with ACA's requested severance, Beechgrove argues that ACA's motion is completely unfounded as a matter of Fifth Circuit law.  First, Beechgrove notes that "[s]eparate trials should . . . be the exception, not the rule" in the Fifth Circuit.  Conners v. United States, 2008 WL 3154684, *1 (E.D. La. July 31, 2008) (citing Laitram Corp. v. Hewlett-Packard Co., 791 F. Supp. 113, 114 (E.D. La. 1992)). This exceptional procedure should occur only if "the issue to be tried separately is so distinct and separate from the others that a trial of it alone may be had without injustice."  Id. (quoting McDaniel v. Anheuser-Busch, Inc., 987 F.2d 298, 305 (5th Cir. 1993)) (internal quotations omitted).  Beechgrove argues that bifurcation is not warranted in this case because many issues, such as causation, extent of loss, and repair costs, will overlap among the various claims, including those against ACA. Furthermore, Beechgrove argues that ACA has not shown that Beechgrove will not be prejudiced by a separate trial. Beechgrove contends that it will be prejudiced if it is required to produce the same witnesses and evidence at a separate trial to prove ACA's liability for penalties and coverage for damages that

a first jury may have found were not covered by Beechgrove's commercial insurer or caused by Carter and MC.  As a further practical matter, Beechgrove notes that separate trials will increase costs and hinder settlement.  Finally, Beechgrove notes that it is under Chapter 11 reorganization, and that separate trials would delay a resolution, further hurting the interests of Beechgrove and its creditors.

    Likewise, Carter opposes ACA's motion on the grounds that ACA has not shown that the issues involved in the interpleader and the claims against it are so distinct and different that they should not be tried together with the principal claims in this case.  Furthermore, Carter notes that ACA hired its own experts to evaluate fire-site damage estimates, which will be necessary evidence at the trial of the main claims.  Carter also notes that ACA has filed a cross-claim against it in the present litigation.  If ACA is granted a separate trial, Carter will have to litigate twice, once in the Beechgrove suit and once in the separate ACA suit.  This result will increase costs, inconvenience witnesses, frustrate judicial economy, and possibly lead to inconsistent judgments.  Carter asserts that even though ACA alleges that the claims against it are limited, they still involve the same operative facts as the principal claim.  As such, the slight convenience to ACA in a separate trial should not outweigh the significant prejudice and inconvenience to the other parties of

severing the claims against ACA and ACA's interpleader.

Finally, MC also opposes ACA's motion, arguing that the evidence necessary for the claims against ACA will be essentially the same as that required against the other insurers in the case. Further, MC that ACA *did not pay any amounts* under the builder's risk policy after the fire, which deprived Beechgrove, MC, and the Joint Venture of proceeds that could have been used to repair the damage and continue the renovation project.  With this brief additional allegation of fact, MC joins in Beechgrove's and Carter's oppositions to ACA's motion.

## DISCUSSION

### A.    Legal Standards under Rules 42, 20, and 21

Federal Rule of Civil Procedure 42 gives a district court discretion, "[f]or convenience, to avoid prejudice, or to expedite and economize, . . . [to] order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims."  Fed. R. Civ. Proc. 42(b).  In addition, Rule 20(b) allows a court to "issue orders--including an order for separate trials--to protect a party against embarrassment, delay, expense, or other prejudice that arises from including a person against whom the party asserts no claim and who asserts no claim against the party." Fed. R. Civ. Proc. 20.  Finally, Rule 21 gives courts broad discretion to "any time, on just terms, add

or drop a party . . . [and] sever any claim against a party." Fed. R. Civ. Proc. 20.

The Fifth Circuit draws a distinction between a request for separate trial under Rule 42(b) and a request for severance of a claim under the broad provisions of Rule 21:

> The procedure authorized by Rule 42(b) should be distinguished from severance under Rule 21. Separate trials will usually result in one judgment, but severed claims become entirely independent actions to be tried, and judgment entered thereon, independently. Unfortunately, this distinction, clear enough in theory, is often obscured in practice since at times the courts talk of separate trial and severance interchangeably.

McDaniel v. Anheuser-Busch, Inc., 987 F.2d 298, 304 n.19 (5th Cir. 1993) (quoting 9 Wright & Miller, Federal Practice and Procedure: Civil § 2387 (1971)).  Nonetheless, some district courts in the Fifth Circuit apply the same considerations to Rule 21 requests for severance and Rule 42(b) requests for separate trials.  See, e.g., Amie v. City of Jennings, La., 2005 WL 3007009, *2 (W.D. La. Nov. 8, 2005) ("The Court's determination as to whether it should sever the claims of the plaintiffs under Rule 21 or whether it should order separate trials under Rule 42 requires the same considerations."). However, other district courts find that "[t]he standards for separate trials and severance differ, and although both consider prejudice to the parties to be a key factor . . . the application of Rule 42(b) involves primarily the consideration of convenience and fairness, [while] that of Rule 21 also

10

presupposes basic conditions of separability in law and logic." David v. M&E Food Mart, Inc.,1995 WL 55306, *1 (E.D. Tex. Jan. 31,1995).  The courts that apply the same standard analyze the claims for which severance or separate trial have been requested based on the following factors: (1) whether the claims arise out of the same transaction or occurrence; (2) whether the posture of discovery as to the respective claims suggests that they should not be tried jointly; (3) whether the claims present common questions of fact or law; (4) whether the claims will require testimony of different witnesses and documentary proof; and (5) the prejudice to either party in the event separate trials are ordered.  See Williams v. Transport Service Co. of Ill., 2008 WL 2002283, *2 (E.D. La. May 7, 2008) (applying factors in context of Rule 21 severance motion); Butcher v. Allstate Ins. Co., 2008 WL 5101339, *3 (S.D. Miss. Nov. 26, 2008) (applying same factors in context of Rule 42(b) motion for separate trial).  Regardless of the correct standard, Rule 42(b) orders for separate trial and Rule 21 severances are reviewed for abuse of discretion.  See Dardar v. Lafourche Realty Co., Inc., 985 F.2d 824, 834 (5th Cir. 1993) (reviewing Rule 42(b) order for abuse of discretion); Brunet v. United Gas Pipeline Co., 15 F.3d 500, 505 (5th Cir.1994) (reviewing Rule 21 severance order for abuse of discretion).

   The Fifth Circuit applies a strict "limitation on ordering a

separate trial of issues under Rule 42(b): the issue to be tried must be so distinct and separate from the others that a trial of it alone may be had without injustice." McDaniel, 987 F.2d at 305.  This rule has its basis in protecting the Seventh Amendment right to have a single jury determine the parties' claims, as well as to prevent inconsistent determinations of the same factual issues.  Id.  As a result, "the use of bifurcation must be grounded upon a clear understanding between the court and counsel of the issue or issues involved in each phase and what proof will be required to pass from one phase to the next." Alabama v. Blue Bird Body Co., Inc., 573 F.2d 309, 319 (5th Cir.1978) (internal quotations omitted).  On the other hand, the Fifth Circuit has noted that "[t]he trial court has broad discretion [under Rule 21] to sever issues to be tried before it." Brunet v. United Gas Pipeline Co., 15 F.3d 500, 505 (5th Cir.1994).

In addition to the provisions allowing for separate trials under Rule 42 or severance of claims under Rule 21, Rule 20(b) includes a general provision allowing for severance to prevent prejudice and delay.  However, the severance provided in Rule 20(b) is essentially reiterative of Rule 42's more specific standards: "Aside from emphasizing the availability of separate trials, Rule 20(b) has little significance inasmuch as the power granted the court therein also is provided by the much broader

grant of discretion set forth in Rule 42(b)." Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, Fed. Prac. & Proc. Civ.3d § 1660.

### B. The Facts of this Case

Under these controlling rules, the claims against ACA nor ACA's interpleader should not be tried separately from the principal claims in this matter under Rule 42(b), nor severed under Rule 21 or Rule 20(b).

First, under the strict standards of Rule 42(b), ACA has not met the burden of showing that the issues to be tried with respect to its interpleader action as well as Beechgrove, MC, and the Joint Venture's claims against it are so distinct and separate from the other claims that a trial of those alone may be had without injustice. While ACA contends that the builder's risk policy had limits of $315,000 and did not cover pre-existing structures, Beechgrove has asserted that the policy limits were $5,000,000 and that the coverage was significantly broader than ACA has claimed. Given this dispute, the issue of Beechgrove, MC, and the Joint Venture's total damages in the fire as well as the nature of those damages will be relevant to determining the existence *vel non* of coverage under the ACA policy. Because these issues are common to all the claims in the principal action, a separate trial under Rule 42(b) is not warranted. Furthermore, given the significant issues raised by Beechgrove

regarding the uncertain monetary limits of the builder's risk policy and the dispute over what property was actually covered, there is no "clear understanding between the [C]ourt and the parties of the issue or issues involved in each phase and what proof will be required to pass from one phase to the next."

In addition, and with specific reference to the factors utilized by some courts to determine when a Rule 42(b) order of separate trial is appropriate, a separate trial of the ACA claims in this matter would not be appropriate. First, the ACA claims arise out of the same transaction or occurrence (i.e. the fire) as the main claims. Second, the discovery in this case has been directed toward a single trial. Third, as noted above, the ACA claims, including the bad faith claims handling claim, present common questions of law and fact as the main claims. Fourth, the ACA claims will require much of the same testimony and proof as the main claims. Finally, Beechgrove, MC, and the Joint Venture will be prejudiced by a separate trial of the ACA claims in that they will be forced to produce duplicative evidence and testimony, and may face an inconsistent determination of fact. Furthermore, the general considerations of convenience and fairness broadly utilized by other courts in this circuit do not weigh in favor of a separate trial of the ACA claims.

Additionally ACA's request for a Rule 21 severance should also be denied. As outlined above, the five factors relevant to

a Rule 21 severance all weigh against a severance of the ACA claims.  Furthermore, because  Rule 21 "presupposes basic conditions of separability in law and logic," a severance in this case is inappropriate because there is no logical or legal basis for separability given that the claims against ACA are intimately related to the principal claims arising out of the fire.

As for ACA's request for a Rule 20(b) severance, the Court finds for the same reasons discussed above that a severance would not promote judicial efficiency, and would actually increase costs, delay, and prejudice to the parties, which is the very result Rule 20(b) severances seek to avoid.  The Court notes that "courts are inclined to avoid duplicating trials of the same matters and therefore exercise their discretion under Rule 20(b) cautiously." Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, 7 Federal Practice and Procedure § 1660, 438 (2d ed.1986). Under the present circumstances, a Rule 20(b) severance "would be burdensome for defendants, [plaintiff], and the judicial system as a whole because it would require multiple proceedings to resolve these related issues." Osgood v. Branam Enters., 2000 WL 280015, *2 (E.D. La. Mar. 15, 2000).

Furthermore, and as a practical matter, ACA can still seek summary judgment on the issues of bad faith damages, as well as the coverage limits under the builder's risk policy, which may eventually render Beechgrove, MC, and the Joint Venture's claims

15

moot depending on the outcome of their other claims.

Finally, courts have denied motions for separate trial and severance, even when the claims sought to be severed did not arise out of the same transaction or occurrence, based on overlapping evidence and issues regarding the value of destroyed property.  Butcher v. Allstate Ins. Co., 2008 WL 5101339 (S.D. Miss. Nov. 26, 2008).  The plaintiff in Butcher filed suit in state court against RH Construction, which had filed a lien against plaintiff for failure to pay under a home construction contract, for various claims arising from the lien filing.  Id. at *1.  After the suit was filed, the property under construction burned to the ground.  Id.  As a result, plaintiff filed a separate suit against Allstate Insurance Company for breach of contract and bad faith claims related to the fire.  Id.  After Allstate removed the case, RH Construction intervened to collect any amounts due to plaintiff under the insurance policy to satisfy amounts due under the construction contract.  Id. Plaintiff moved for severance of RH Construction's intervention under Rule 21 or for a separate trial under Rule 42(b).  Id. at 2.  The Butcher court recognized that the claims of RH Construction did not arise out of the same transaction or occurrence as plaintiff's claims against Allstate, but nonetheless refused to sever the two claims.  Id.  Specifically, the court found that "the claims present common questions of law

and fact, including the subject residence, Plaintiffs' financial situation, potential motive, and the value and quality of the subject property . . . [and] that judicial economy facilitates the claims being tried together, as the claims will involve overlapping evidence." Id. In addition, and as for plaintiff's Rule 42(b) motion, the Butcher court concluded that although the claims might involve some distinct witnesses and evidence "the claims will also involve many common witnesses and common evidence." Id. at 3. As in Butcher, the claims in this case involve overlapping facts, evidence, and witnesses. Further, and unlike Butcher, the claims in this case actually *do* arise out of the same transaction or occurrence, and thus severance or separation of trials is even less appropriate. Accordingly,

**IT IS ORDERED** that ACA's **Motion for Separate Trial of the Petition (Complaint) Filed by Beechgrove Redevelopment, LLC, the Cross Claim and the Intervention Filed by Moss Creek Development Co., Inc. and Moss Creek/Barton Malow, a Joint Venture Against Assurance Company of America, and the Interpleader Filed by Assurance Company of America** (Rec. Doc. 191) is hereby **DENIED.**

New Orleans, Louisiana, this 11th day of February, 2009.

CARL J. BARBIER
UNITED STATES DISTRICT JUDGE